ARGUED SEPTEMBER 22, 2020
OPINION FILED DECEMBER 29, 2020
QUESTIONS CERTIFIED ON REHEARING APRIL 13, 2021

**No. 19-7129**

# In the United States Court of Appeals for the District of Columbia Circuit

———————————

RINAT AKHMETSHIN,

*Plaintiff-Appellant,*

*v.*

WILLIAM BROWDER,

*Defendant-Appellee.*

———————————

On Appeal from the United States District Court
for the District of Columbia
Case No. 18-cv-1638 (The Honorable Emmet G. Sullivan)

———————————

**SUPPLEMENTAL BRIEF FOR DEFENDANT-APPELLEE
WILLIAM BROWDER**

———————————

Michael J. Gottlieb
Aaron E. Nathan
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com

*Counsel for Defendant-Appellee
William Browder*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

A.      All parties, intervenors, and amici appearing before the district court and in this court are listed in the Brief for Plaintiff-Appellant.

B.      References to the rulings at issue appear in the Brief for Plaintiff-Appellant.

C.      This case was previously before the D.C. Court of Appeals on certification from this Court. *See Akhmetshin v. Browder*, No. 21-SP-238 (D.C. May 26, 2022).

# TABLE OF CONTENTS

Certificate as to Parties, Rulings, and Related Cases ................................................. i

Table of Contents ........................................................................................................ ii

Table of Authorities .................................................................................................... iii

Summary of Argument ................................................................................................1

Argument......................................................................................................................4

    I.   D.C. Courts Lack Specific Personal Jurisdiction Over Browder
       Under Federal Constitutional Principles. ........................................................4

        A.    This Court Must Either Consider Browder's Constitutional
             Objections to Personal Jurisdiction or Remand for the District
             Court to Do So Before Conducting Jurisdictional Discovery...............4

        B.    Browder's Visits to D.C. for the Purpose of Influencing the
             Federal Government Do Not Constitute "Purposeful Availment"
             of the District as a Distinct Legal Forum. ............................................7

        C.    Whatever Forum Contacts this Court May Consider,
             Akhmetshin's Claim Does Not "Arise out of or Relate to" Them. ....11

        D.    Exercising Specific Jurisdiction over Browder Would Offend
             Fair Play and Substantial Justice.........................................................19

Conclusion ..................................................................................................................22

Certificate of Compliance ..........................................................................................23

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Akhmetshin v. Browder*,
   275 A.3d 290 (D.C. 2022) ........................................................................2, 3, 4

*Akhmetshin v. Browder*,
   983 F.3d 542 (D.C. Cir. 2020)................................................................13

*Akhmetshin v. Browder*,
   993 F.3d 922 (D.C. Cir. 2021)................................................................1

*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
   480 U.S. 102 (1987)................................................................................9

*Atchley v. AstraZeneca UK Ltd.*,
   22 F.4th 204 (D.C. Cir. 2022)....................................7, 8, 11, 12, 19

*Bernhardt v. Islamic Republic of Iran*,
   47 F.4th 856 (D.C. Cir. 2022)....................................................14, 17

*Bristol-Meyers Squibb Co. v. Superior Court of California*,
   137 S. Ct. 1773, 1781 (2017) ................................................................13

*Calder v. Jones*,
   465 U.S. 783 (1984)......................................................................17, 18

*Etchebarne-Bourdin v. Radice*,
   982 A.2d 752 (D.C. 2009) ....................................................................12

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*,
   141 S. Ct. 1018 (2021)................................................11, 12, 19, 20, 21

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)................................................................................12

*Hepp v. Facebook*,
   14 F.4th 204 (3d Cir. 2021) ................................................................14

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945)................................................................................2

## TABLE OF AUTHORITIES (cont'd)

*Estate of Klieman ex rel. Kesner v. Palestinian Auth.*,
    923 F.3d 1115 (D.C. Cir. 2019) ...................................................................17, 18

*Johnson v. TheHuffingtonPost.com, Inc.*,
    21 F.4th 314 (5th Cir. 2021) ...............................................................14, 19, 21

*Klinghoffer v. S.N.C. Achille Lauro*,
    937 F.2d 44 (2d Cir. 1991) ...........................................................................10

*LaShawn A. v. Barry*,
    87 F.3d 1389 (D.C. Cir. 1996) .......................................................................13

*McFarlane v. Esquire Mag.*,
    74 F.3d 1296 (D.C. Cir. 1996) .......................................................................12

*Mueller Brass Co. v. Alexander Milburn Co.*,
    152 F.2d 142 (D.C. Cir. 1945) .........................................................................9

*Richison v. Ernest Grp., Inc.*,
    634 F.3d 1123 (10th Cir. 2011) ........................................................................6

*Singleton v. Wulff*,
    428 U.S. 106 (1976) .........................................................................................6

*Stewart v. Ramsay*,
    242 U.S. 128 (1916) .........................................................................................9

*U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*,
    508 U.S. 439 (1993) .........................................................................................6

*United States v. Rapone*,
    131 F.3d 188 (D.C. Cir. 1997) .........................................................................5

*Walden v. Fiore*,
    571 U.S. 277 (2014) ..................................................................................17, 18

*Vapotherm, Inc. v. Santiago*,
    38 F.4th 252 (1st Cir. 2022) ...........................................................................14

## TABLE OF AUTHORITIES (cont'd)

*Women's Equity Action League v. Cavazos*,
   906 F.2d 742 (D.C. Cir. 1990)................................................................6

*Zadvydas v. Davis*,
   533 U.S. 678 (2001)........................................................................9

*Zeneca Ltd. v. Mylan Pharms., Inc.*,
   173 F.3d 829 (Fed. Cir. 1999) ....................................................8, 10

**Statutes**

D.C. Code § 13-423(a)(1) ..........................................................13, 20

D.C. Code § 13-423(a)(3) ................................................................13

D.C. Code § 13-423(a)(4) .................................... 1, 2, 3, 5, 7, 12, 13, 20

**Other Authorities**

4A *Wright & Miller, Federal Practice & Procedure* § 1077
   (4th ed. Apr. 2022)......................................................................10

## SUMMARY OF ARGUMENT

This appeal arises out of a defamation action targeting four statements that Defendant-Appellee William Browder made, while outside of Washington, D.C., about a meeting that Plaintiff-Appellant Rinat Akhmetshin attended at Trump Tower in New York. None of Browder's four statements plausibly qualifies as actionable defamation, for reasons explained in Mr. Browder's motion to dismiss. JA37–44.

Browder has now spent more than four years litigating personal jurisdiction in a case that Akhmetshin chose to file in a federal diversity action in the District of Columbia (rather than New York, where the challenged statements were made and where the Trump Tower meeting took place). Akhmetshin has asserted specific personal jurisdiction under D.C. Code § 13-423(a)(4) on the basis of his in-forum injuries, which he alleges to have been caused by Browder's out-of-forum statements, *and* a set of unrelated contacts with the District that supposedly satisfy subsection (a)(4)'s "persistent course of conduct" plus factor.

This Court certified questions to the D.C. Court of Appeals involving the scope of the government contacts exception, which the parties until that point had litigated as a statutory exception to personal jurisdiction under subsection (a)(4). *Akhmetshin v. Browder*, 993 F.3d 922 (D.C. Cir. 2021).

Before the D.C. Court of Appeals, Akhmetshin then raised an argument that no party or court in this litigation had ever raised before: that the government

1

contacts exception does not apply to suits, like this one, brought pursuant to subsection (a)(4). The D.C. Court of Appeals adopted that argument in narrower form and announced a new rule of D.C. law: that the government contacts exception does not apply to the "persistent course of conduct" prong of subsection (a)(4). *Akhmetshin v. Browder*, 275 A.3d 290, 296 (D.C. 2022).

Although the D.C. Court of Appeals declined to apply the government contacts exception to subsection (a)(4) as a matter of statutory interpretation, it did so relying on its view that "many of the concerns that have informed the government contacts principle" are "already a constitutional prerequisite to the exercise of specific personal jurisdiction." *Id.* at 295. For that reason, the Court of Appeals determined it "need not extend an 'exception' under District law to § (a)(4) to capture this concern"; instead, defendants can "raise many of the concerns that have informed the government contacts principle in arguing that the exercise of personal jurisdiction would not be constitutionally 'reasonable,'" a "constitutional inquiry" that "does not depend on the scope of the exception under District law," *id.* at 295–96. With respect to this case, the D.C. Court of Appeals held that "Mr. Browder's arguments that he has not purposefully availed himself of the protections and benefits of D.C. law by engaging in federal policy advocacy in the District," *id.* at 296, and his argument that "government contacts . . . 'are not "contacts" within the meaning of *International Shoe* and its progeny'" were each "constitutional

argument[s] that can be addressed under a traditional due process analysis," *id.* at 295 n.6. As the D.C. Court of Appeals concluded, "that is a question the federal courts can resolve" *Id.* at 296.

This Court should now resolve the question put to it by the D.C. Court of Appeals. Although the parties have thus far litigated the "government contacts" principles relevant to this case through the prism of D.C. statutory law, the D.C. Court of Appeals has now held (for the first time) that those principles should be applied under federal, rather than D.C., law, in cases brought under subsection (a)(4) of the long-arm statute. As set forth below, this Court can and should adjudicate those questions without the need for further discovery, and should affirm the judgment below, for any of three reasons: first, because Browder's contacts with the District for the purpose of influencing federal policy do not constitute "purposeful availment" as a matter of federal due process; second, because Akhmetshin has not shown a sufficient nexus between the "persistent course of conduct" he alleges and the out-of-District statements that give rise to his claim; and third, because the exercise of jurisdiction would violate notions of fair play and substantial justice.

**ARGUMENT**

**I.    D.C. Courts Lack Specific Personal Jurisdiction Over Browder Under Federal Constitutional Principles.**

**A. This Court Must Either Consider Browder's Constitutional Objections to Personal Jurisdiction or Remand for the District Court to Do So Before Conducting Jurisdictional Discovery.**

In light of the D.C. Court of Appeals' disposition, this Court should adjudicate Browder's objections to the exercise of specific personal jurisdiction as a matter of federal constitutional law. At minimum, this Court should remand for the District Court to consider those objections before proceeding with jurisdictional discovery.

The D.C. Court of Appeals' certification opinion has shifted to this Court the responsibility to resolve Browder's personal jurisdiction arguments as "constitutional argument[s] that can be addressed under a traditional due process analysis," which present "a question the federal courts can resolve." *Akhmetshin*, 275 A.3d at 295 n.6, 296. Up until certification, the parties had litigated this matter based on the understanding that, in cases brought under subsection (a)(4) of the long-arm statute, the constitutional principles underlying the government contacts exception were encompassed within D.C. statutory law. Now that the D.C. Court of Appeals has held that such questions may *only* be addressed under federal law, Browder must be permitted to advance his arguments under that new framework.

It is entirely appropriate now for this Court to address Browder's constitutional arguments. Before the District Court, and elsewhere, Browder

advanced arguments sounding in constitutional principles: arguing that due process limits the exercise of personal jurisdiction, JA50, and that due process principles informed the limitations imposed on subsection (a)(4) by the government contacts exception, Certification Brief for William Browder at 27–30. It is of no moment that Browder's arguments below focused principally on the statutory government contacts exception, in light of the parties' and District Court's assumption (based upon numerous cases previously decided at the trial court level) that the government contacts exception incorporated those constitutional concerns. As soon as Akhmetshin disputed the application of the government contacts exception to subsection (a)(4), Browder immediately responded that the exception had "advanced . . .due process" limits on specific personal jurisdiction "[f]rom its inception." *Id.* at 28. Now that the D.C. Court of Appeals has dispensed with the statutory exception in these circumstances, those constitutional limits cannot be avoided.

Additionally, Browder's constitutional objections to personal jurisdiction are fairly incorporated within the government-contacts-exception arguments that he has litigated throughout this case. The arguments raised herein merely offer "new legal authority for the position that [Browder] repeatedly advanced before the district court," *United States v. Rapone*, 131 F.3d 188, 196 (D.C. Cir. 1997)—namely, that he is not subject to personal jurisdiction for reasons sounding in due process principles.

5

In any event, Browder's constitutional arguments were preserved for appeal under this Court's forfeiture jurisprudence. It is well settled that "a court may consider an issue antecedent to and ultimately dispositive of the dispute before it, even an issue the parties fail to identify and brief." *U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993) (cleaned up), particularly "where the proper resolution is beyond any doubt." *Singleton v. Wulff*, 428 U.S. 106, 121 (1976). Because "there can be no estoppel in the way of ascertaining the existence of a law," *U.S. Nat'l Bank of Oregon*, 508 U.S. at 447 (cleaned up), "[w]hen intervening legal authority makes clear that a prior decision bears qualification, that decision must yield. Law of the case cannot be substituted for the law of the land," *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751 n.14 (D.C. Cir. 1990) (cleaned up). Here, the whole of D.C. and federal law as it is currently understood must be applied to any further litigation in this case—especially given this Court's power to affirm on any grounds supported by the record. *See, e.g.*, *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011) (Gorsuch, J.) (explaining "why we treat arguments for *affirming* the district court differently than arguments for *reversing* it").

Finally, the justifications for considering the merits of Browder's constitutional arguments are overwhelmingly strong in this case because, otherwise, Akhmetshin alone would benefit from an argument that *he* indisputably forfeited

6

below, as well as on appeal, before raising it for the first time on certification: that the government contacts exception does not apply to subsection (a)(4)'s "persistent court of conduct" plus factor. Akhmetshin never raised that argument before the District Court *or this Court*. *See* JA149–56; Brief for Plaintiff-Appellant at 13–27 (same). Although Browder pointed out that the argument was a new one, the D.C. Court of Appeals adjudicated it without comment. *See* Certification Brief for William Browder at 40; Certification Pet. for Reh'g En Banc at 3. To the extent this Court concludes that any of Browder's arguments are new for purposes of this litigation, it would be plainly inequitable for it to excuse Akhmetshin's waiver without considering Browder's defenses.

### B. Browder's Visits to D.C. for the Purpose of Influencing the Federal Government Do Not Constitute "Purposeful Availment" of the District as a Distinct Legal Forum.

Appellee respectfully submits that the decision below should be affirmed under a constitutional analysis informed by the same principles that traditionally have informed the government contacts exception. As this Court recently explained, under federal due process principles, "plaintiffs must meet three requirements to establish a basis for the court's exercise of specific personal jurisdiction: (1) minimum contacts demonstrating that the defendant purposefully availed itself of the forum; (2) relatedness between the contacts and the claim; and (3) compliance

with 'fair play and substantial justice.'" *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 233 (D.C. Cir. 2022). Each of those requirements is lacking here.

The purposeful availment requirement is not satisfied here for at least two reasons. First, a nonresident's visits to the District to engage with federal institutions that happen to be located within D.C. do not qualify as jurisdictional contacts *with the District* at all. In an analogous context, the Federal Circuit declined to find personal jurisdiction over a defendant in Maryland based on contacts with the federal Food and Drug Administration office located within that state: That defendant's contacts were "not actually with the state of Maryland at all," but with the "federal government whose office . . . happens to be within that state." *Zeneca Ltd. v. Mylan Pharms., Inc.*, 173 F.3d 829, 835 (Fed. Cir. 1999) (Rader, J., concurring). Just so here: Browder's travels to the District to advocate before federal governmental bodies located in the District were not jurisdictional contacts *with the District* because they were "purposefully directed" at federal governmental institutions that are either literal or figurative federal enclaves, not at the District's laws, businesses, or residents. *Id.*

Second, even if visits to the District for the purpose of influencing federal policy did constitute contacts *with the District*, they do not constitute "purposeful availment." This Court long ago held that contacts with the District for the purpose of "liaison with Government agencies" do not constitute "doing business" within the

meaning of the older D.C. personal jurisdiction statute, while recognizing that "without the statute the question would still be present as a jurisdictional requisite to Constitutional due process." *Mueller Brass Co. v. Alexander Milburn Co.*, 152 F.2d 142, 144, 145 n.1 (D.C. Cir. 1945); *see id.* at 144 ("We do not think that such activities constitute doing business in the District of Columbia in the jurisdictional sense."). In *Mueller Brass*, this Court restated and reaffirmed that conclusion in the express language of specific personal jurisdiction. *Id.* at 145 (holding that the contacts were insufficient "[w]hether measured by the 'corporate presence' standard, *or the 'reasonable jurisdiction' standard, or by the relation of the cause of action to the forum* . . . .") (cleaned up) (emphasis added).[1] *Mueller Brass* remains binding precedent in this Court.

Those principles also accord with the longstanding common-law rule that "suitors, as well as witnesses, coming from another state or jurisdiction, are exempt from the service of civil process while in attendance upon court, and during a reasonable time in coming and going." *Stewart v. Ramsay*, 242 U.S. 128, 129 (1916). That same immunity also applies to appearances before the legislative and executive

---

[1] Browder unquestionably possesses due process rights as a nonresident alien who has been sued in a U.S. court, *see Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102 (1987), and as a "person" who made the alleged statements while present in the United States even on a "temporary" basis, *see Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

branches. *See* 4A *Wright & Miller, Federal Practice & Procedure* § 1077 (4th ed. Apr. 2022).

In light of similar constitutional concerns, other courts have excluded contacts such as Browder's from the jurisdictional calculus. In *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44 (2d Cir. 1991), the Second Circuit recognized that the Palestinian Liberation Organization's contacts with New York for the purpose of visiting the United Nations could not factor into a jurisdictional analysis—in that case, as a matter of "non-constitutional policy considerations, such as the Judiciary's reluctance to interfere with the smooth functioning of other governmental entities," although the Second Circuit recognized that the exclusion of such contacts was also "based in part on the constitutional right to petition the Government for redress of grievances," even if appeals to the United Nations did not implicate that right, *id.* at 51–52 (cleaned up); *see also Zeneca Ltd.*, 173 F.3d at 831 (opinion of Gajarsa, J.) (a government contacts exception applied in Maryland based on "concerns regarding the First Amendment right to petition the federal government," and "may also have due process underpinnings").

In sum, this Court should accept the D.C. Court of Appeals' invitation to consider the principles underlying the D.C.-law government contacts exception as a matter of *federal* law and hold that a defendant's visits to D.C. for the purpose of influencing federal policy occur entirely because D.C. is the seat of national

10

government where federal policy is made, and therefore do not constitute "purposeful availment" of the District as a distinct legal forum. Under these principles, each of Mr. Browder's visits to the District for the purpose of influencing federal policy—and not just his particular government-facing activities and meetings—must be excluded from the jurisdictional analysis. *See* Pet. for Reh'g at 4–8 (explaining that *all* of Browder's visits to D.C. occurred because it is the seat of national government, and Browder's efforts to influence federal policy via policy organizations and media entities occurred in the District because it is the seat of national government).

### C. Whatever Forum Contacts this Court May Consider, Akhmetshin's Claim Does Not "Arise out of or Relate to" Them.

The Due Process Clause also bars the exercise of specific jurisdiction over Browder here because Akhmetshin's claim does not "arise out of or relate to" any set of jurisdictionally sufficient contacts. *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1018, 1025 (2021) (cleaned up); *see Atchley*, 22 F.4th at 233. As Browder argued previously, specific jurisdiction over a nonresident is proper only "where the plaintiff's claim arises from a specific act (or acts) connecting the nonresident to the District." Certification Brief for William Browder at 27. Significant intervening authority decided since the parties last submitted briefing to this Court makes clear that no set or subset of the forum contacts

Akhmetshin has alleged sufficiently "relates to" Akhmetshin's claim in this litigation as mandated by the Due Process Clause. *Ford*, 141 S. Ct. at 1025.

"Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (cleaned up). Hence, for purposes of specific personal jurisdiction, "[t]he plaintiff's claims . . . must arise out of or relate to the defendant's contacts with the forum." *Ford*, 141 S. Ct. at 1025 (cleaned up); *Atchley*, 22 F.4th at 233. As the Supreme Court recently explained, the "relate to" half of the "arise out of or relate to" standard "does not mean anything goes." *Ford*, 141 S. Ct. at 1026. Instead, "the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.*

The constitutional requirement of demonstrating a "relatedness between the contacts and the claim," *Atchley*, 22 F.4th at 233, creates an apparent conflict with existing D.C. law interpreting subsection (a)(4) of the long-arm statute. Namely, under subsection (a)(4), a plaintiff's claim "need not arise . . . from the 'plus factors' that are imposed by subsection (a)(4)," but only from the plaintiff's out-of-forum acts that caused an allegedly tortious injury in the forum. *Etchebarne-Bourdin v. Radice*, 982 A.2d 752, 762 (D.C. 2009); *see McFarlane v. Esquire Mag.*, 74 F.3d 1296, 1300 (D.C. Cir. 1996) (subsection (a)(4) requires additional plus factors "*not*

*necessarily related* to the contested act or injury.") (emphasis added).[2] That interpretation of D.C. statutory law is now inconsistent with the Supreme Court's personal jurisdiction precedents. Indeed, it is substantially the same approach that the Court rejected in *Bristol-Meyers Squibb Co. v. Superior Court of California*, under which "the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims." 137 S. Ct. 1773, 1781 (2017). As the Supreme Court held, its "cases provide no support for this approach, which resembles a loose and spurious form of general jurisdiction." *Id.*

Akhmetshin's jurisdictional allegations must satisfy *both* the D.C. long-arm statute and the "relatedness" requirement of federal due process. And, as this Court recently explained, the "relate to" prong must, at a minimum, incorporate significant

---

[2] Here, the District Court held (and Akhmetshin has not disputed on appeal) that Akhmetshin abandoned any argument that personal jurisdiction exists under subsections (a)(1) and (a)(3) of the D.C. long-arm statute, which cover claims "arising from" a defendant's conduct in the District. JA390 n.12. If personal jurisdiction exists, it must be under subsection (a)(4), and in particular under subsection (a)(4)'s second ("persistent course of conduct") plus factor, rather than the first ("regularly does or solicits business") or third ("derives substantial revenue"). This Court held in its initial opinion that "neither the first nor third plus factors are satisfied" here, *Akhmetshin v. Browder*, 983 F.3d 542, 557 (D.C. Cir. 2020), and contemplated "precisely focused discovery aimed at addressing whether Browder has engaged in a persistent course of conduct within the District," *id.* at 558 (cleaned up). Nothing about the subsequent proceedings has changed this Court's holding that the first and third plus factors are not satisfied here, rendering it firmly established as law of the case. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc).

enough limits so as not to "collapse the core distinction between general and specific personal jurisdiction." *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 866 (D.C. Cir. 2022). Among other things, the relatedness requirement must "ensure[] that a district court exercises specific personal jurisdiction only over those foreign defendants who had fair warning that a *particular activity* may subject them" to jurisdiction in the forum. *Id.* at 864 (cleaned up) (emphasis added). Since *Ford*, other circuits have enforced the relatedness requirement with similar rigor. *See, e.g.*, *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 261 (1st Cir. 2022) ("The cases establish that in-state injury alone is not sufficient under the Due Process Clause to prove relatedness for tort claims."); *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 320 (5th Cir. 2021) (*Ford*'s relatedness requirement requires "fair warning" to a libel defendant and a "chance to limit or avoid his exposure to the courts of a particular state"); *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) (requiring a "strong connection" to satisfy *Ford*'s relatedness requirement).

The requirement that a defendant's contacts must give them "fair warning" of the possibility of jurisdiction for claims relating to those contacts means that contacts post-dating the subject of a plaintiff's claim cannot qualify as sufficiently "related to" the claim for purposes of personal jurisdiction. Simply put, fair warning means *advance* warning, and for specific jurisdiction purposes a claim cannot "relate to" (or "arise out of") forum contacts that occurred after the challenged conduct.

Similarly, contacts that long pre-date the subject-matter of a plaintiff's claim do not give sufficient "fair warning" of a potential future suit to supply the necessary "relatedness" between contacts and claim.

All of the in-District contacts on which Akhmetshin relies fail to support the exercise of specific personal jurisdiction because they post-date, long pre-date, or are plainly unrelated to Akhmetshin's claim. Akhmetshin's "defamation claim is not based on anything Browder did or said in D.C.," Certification Brief for William Browder at 2, but instead turns on four statements Browder made outside of D.C, in July 2017, about a meeting Akhmetshin attended in New York. On appeal, in order to establish a "persistent course of conduct," Akhmetshin cites sixteen alleged "non-government" contacts, principally involving media appearances in D.C. ranging from 2009 to 2018. Brief for Plaintiff-Appellant at 11, 14–15. In his Complaint, Akhmetshin alleged that:

- Browder "engaged numerous lobbying and public relations firms in Washington D.C.; met with members of Congress and their staff, including Senators Benjamin Cardin and John McCain, in Washington, D.C.; and testified in congressional hearings," a lobbying effort that "culminated in the passage of the Sergei Magnitsky Rule of Law Accountability Act of 2012 . . . on December 14, 2012." JA10.

- Browder provided fact testimony before government agencies and Congress, including the United States Helsinki Commission in 2009, the Tom Lantos Human Rights Commission of the U.S. House of Representatives in 2012, and the Committee on Foreign Affairs, Subcommittee on Africa, Global Health, Global Human Rights, and International Organizations, of the U.S. House of Representatives in

2015, and the Senate Judiciary Committee and the United States Helsinki Commission in 2017. JA16–17.

- Browder "caused Hermitage to submit a letter to the Department of Justice . . . alleging that Mr. Akhmetshin and others had violated the Foreign Agent Registration Act." JA13.

- And, "[i]n his purported capacity as an expert on Russian finances, politics, and intelligence, Browder has appeared dozens of times on television programs, on radio segments, at think tank events, and at NGO gatherings in Washington D.C." JA17.

This Court must now confront whether any of these contacts sufficiently relate to Browder's 2017 statements for due process purposes. They do not. For starters, nine of the sixteen contacts listed at pages 14–15 of Akhmetshin's opening brief occurred *after* Browder's challenged statements, requiring their exclusion from the jurisdictional calculus. Further, even under Akhmetshin's own version of events, he was not on "Browder's radar" until 2015 or 2016 when he began to consult for Baker & Hostetler. JA140.[3] Thus, at minimum, all of the alleged contacts prior to 2015 must also be excluded. Even as to the small number of alleged contacts between 2015 and July 14, 2017, nearly all are meetings, events, or speeches about the Magnitsky Act, not Akhmetshin. Akhmetshin has described his claims as "*not* about the Magnitsky Act or Russia's interference with the 2016 elections." JA134. Indeed, with the sole exception of the "Hermitage Letter"—which was sent by a U.K.

---

[3] Notably, this work involved a civil forfeiture proceeding, commenced in 2013 in New York, involving "New York real estate." JA11.

corporate entity to petition for policy action by the U.S. Department of Justice—the few contacts Akhmetshin has alleged between 2015 and July 14, 2017 have nothing to do with Akhmetshin, or his alleged connections to Russian intelligence. None of this could plausibly have given Browder "fair warning" that the "particular activity" of speaking about Akhmetshin in New York would subject Browder to litigation in D.C. *Bernhardt*, 47 F.4th at 864.[4]

Contrary to Mr. Akhmetshin's conclusory assertion below, *Calder v. Jones*, 465 U.S. 783 (1984), fails to supply a basis for personal jurisdiction here, nor does it establish that the "contacts" from which Mr. Akhmetshin's claim arises are jurisdictionally sufficient by themselves. Akhmetshin asserted below that that this case "is on all fours with" *Calder* because "the reputation-based effects of Browder's defamatory statements . . . connect Browder to this forum." JA156. But cases subsequent to *Calder* have clarified that "mere injury to a forum resident is not a sufficient connection to the forum." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). Following *Walden*, it is clear that without more, harm "felt by forum residents"— even *forseeable* harm—"cannot . . . qualify" as a jurisdictionally sufficient contact for purposes of a due process analysis even under a *Calder* theory. *Estate of Klieman*

---

[4] Moreover, certain contacts on which Mr. Akhmetshin has relied—*e.g.*, attending Senator John McCain's 2018 funeral, a 2014 book party, or an even earlier social dinner, *see* Brief for Plaintiff-Appellant at 14–15—illustrate the lack of any plausible relationship between Akhmetshin's claimed "persistent course of conduct" and the statements at issue in this litigation.

*ex rel. Kesner v. Palestinian Auth.*, 923 F.3d 1115 (D.C. Cir. 2019), *GVR'ed in light of new statutory authority*, 140 S. Ct. 2713 (2020), *reinstated in relevant part*, 2020 WL 5361653 (D.C. Cir. Aug. 18, 2020). To hold otherwise "would impermissibly allow a *plaintiff's* contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* (quoting *Walden*, 571 U.S. at 289) (cleaned up).

In any event, this case is unlike *Calder* in nearly all material respects. There, the forum was the "focal point both of the story and of the harm suffered," because "[t]he defendants relied on phone calls to 'California sources' for the information in their article; they wrote the story about the plaintiff's activities in California; they caused reputational injury in California by writing an allegedly libelous article that was widely circulated in the State; and the 'brunt' of that injury was suffered by the plaintiff in that State." *Walden*, 571 U.S. at 287 (2014) (citing *Calder*, 465 U.S. at 788–89). Here, Akhmetshin has alleged nothing of the sort. Browder did not aim his statements at the District, but clearly at New York, which was the situs of the statements, the location of the Trump Tower meeting, and the jurisdiction of the *Prevezon* litigation that Akhmetshin claims landed him on Browder's "radar." By contrast, Akhmetshin has described virtually all of Browder's in-District activities as promoting the Magnitsky Act, while conceding that his claims in this "case [are] not about the Magnitsky Act." JA134.

Under the constitutional principles described above, Akhmetshin can establish personal jurisdiction in this case only if Akhmetshin's claims "relate to" some set of jurisdictionally sufficient contacts. *Ford*, 141 S. Ct. at 1025 (cleaned up); *Atchley*, 22 F.4th at 233 (requiring "relatedness between *the contacts and the claim*") (emphasis added). But for the reasons explained above, they do not, and Akhmetshin has never asserted that jurisdictional discovery could plausibly establish such facts. Thus, the District Court did not abuse its discretion in denying jurisdictional discovery regarding Browder's activities in the District, because Akhmetshin has never claimed at any point that Browder's alleged "persistent course of conduct" has any nexus to the challenged statements. *See Johnson,* 21 F.4th at 326 (jurisdictional discovery improper where it would "determine 'the extent' of the activities that we already have said cannot support jurisdiction").

### D. Exercising Specific Jurisdiction over Browder Would Offend Fair Play and Substantial Justice.

Finally, founding jurisdiction on Mr. Browder's visits to D.C. for the purpose of influencing federal policy—and especially those that post-dated or so long pre-dated Akhmetshin's substantive claims as to not give "fair warning" of his suit—would offend the independent limit of "fair play and substantial justice" that due process imposes on personal jurisdiction. *Atchley*, 22 F.4th at 233.

There is no dispute that for decades, the governing law in D.C. courts held that the government contacts exception (1) applied to the entire D.C. long-arm

statute, including subsection (a)(4)'s coverage of allegedly tortious out-of-forum acts; and (2) applied broadly to visits to the District beyond direct contacts with government officials. *See* Certification Brief for William Browder at 22–25 & nn.17–20. As Akhmetshin himself admitted in his opening brief before this Court, numerous categories of "government contacts" were understood to be exempt from the jurisdictional calculus whether under subsection (a)(1) or (a)(4). Brief for Plaintiff-Appellant at 18–19.

It would violate "fair play and substantial justice," and therefore due process, to allow Akhmetshin to hale Browder into D.C. court based on contacts that were widely understood to be exempt at the time they were made. Browder, like countless defendants in his position, ordered his activities in the district in reliance on an understanding of District law that the Court of Appeals has now upended. Ignoring that reliance would be inconsistent with "fair play." In *Ford*, exercising jurisdiction "treat[ed] Ford fairly" because Ford had "clear notice that it [would] be subject to jurisdiction in the State's courts" based upon a "predictable" regime that "allow[ed] Ford to structure its primary conduct to lessen or even avoid the costs of state court litigation." 141 S. Ct. at 1029–30 (cleaned up). That "clear notice" depended in turn on Ford's "conducting *so much* business" in the fora, which invoked "the benefits and protection of their laws" like "the enforcement of contracts, the defense of property, the resulting formation of effective markets." *Id.* at 1029 (cleaned up)

(emphasis added). Because that forum contact was so extensive as to "create[] reciprocal obligations . . . enmeshed . . . with Ford's government-protected in-state business," the Court held that jurisdiction related to those contacts "cannot be thought surprising either." *Id.* at 1030 (cleaned up).

Exactly the opposite is true here. It is both legally and literally "surprising" that Browder can be sued in D.C. for statements made in New York based entirely on his travels to the District for the unrelated purpose of influencing federal policy. Browder had no notice, let alone "clear notice," that those trips would subject him to jurisdiction here (and certainly not with respect to these claims). And Browder had no chance to "structure [his] primary conduct" to avoid personal jurisdiction under these new rules. *Ford*, 141 S. Ct. at 1030 (cleaned up); *see Johnson*, 21 F.4th at 322 ("Fairness . . . dictates that a defendant must have some chance to limit or avoid its exposure to a particular state's courts."). Accordingly, specific jurisdiction cannot be said to be "fair" under these circumstances, as due process requires.

## CONCLUSION

The judgment of the District Court should be affirmed. In the alternative, this Court should remand for the District Court to consider Mr. Browder's constitutional objections to personal jurisdiction in the first instance, before considering whether and to what extent jurisdictional discovery would be appropriate.

Respectfully submitted.

/s/ Michael J. Gottlieb
Michael J. Gottlieb
Aaron E. Nathan
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com

*Counsel for Defendant-Appellee William Browder*

NOVEMBER 14, 2022

22

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that this brief was prepared in double-spaced, 14-point Times New Roman font, and contains 5,151 words, as determined by the word-count function of Microsoft Word.

/s/ Michael J. Gottlieb

November 14, 2022